In re Merle **BUNCH** et al.

v.

Donald **BARNETT**, etc., et al.

No. Civ. 73–5094.

United States District Court,
D. South Dakota.

May 7, 1974.

See also D. C., 62 F.R.D. 615.

**24**

Michael Wolff, Rapid City, S. D., for plaintiffs.

George Beal, Rapid City, S. D., for Mayor Donald Barnett and the city employees.

William F. Clayton, U. S. Atty., Sioux Falls, S. D., and Larry Von Wald, Asst. U. S. Atty., Rapid City, S. D., for the United States Government.

## MEMORANDUM OPINION

BOGUE, District Judge.

This is an action by certain victims of the Rapid City, South Dakota flood of June of 1972 to recover certain rental charges collected by the City of Rapid City and its officials and to enjoin the further efforts of the City of Rapid City to collect the same. The City of Rapid City has attempted to collect rent for lots that the city provided to the United States on which to place disaster relief temporary housing. The defendants are officials of the City of Rapid City, both past and present, and the United States of America and two of its officials. The defendants in the above-entitled case have made separate motions to dismiss. The United States moves this Court to dismiss the action based upon lack of jurisdiction over the subject matter and because the complaint fails to state a claim upon which relief can be granted. The City of Rapid City, and its officials, moves to dismiss the complaint upon the grounds that the complaint fails to state a claim upon which relief can be granted and in addition, that the individual defendants were acting within the scope of their duties and hence immune from personal liability. This Court will pass upon the jurisdictional issues contained in the defendant's motion first.

## JURISDICTION

The plaintiffs have asserted that 28 U.S.C. § 1346(a)(2) is their jurisdictional basis for the action against the United States. Such act reads:

"Any . . . civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

The United States Supreme Court in United States v. Shaw, 309 U.S. 495, 60

S.Ct. 659, 84 L.Ed. 888 (1939), construed this statute to be both a waiver of sovereign immunity and a grant of jurisdiction to the district courts in cases involving constitutional or contract claims. Plaintiffs also assert jurisdiction of this Court pursuant to 28 U.S.C. § 1337. In view of this Court's determination immediately above that this Court does in fact have jurisdiction pursuant to 28 U.S.C. § 1346(a)(2), it is not necessary for this Court to reach the merits of the § 1337 jurisdiction herein.

■ The plaintiffs assert jurisdiction in this Court in their action against the City of Rapid City and its officials pursuant to 42 U.S.C. § 1983. § 1983 creates a remedy against people who, acting under color of state law, deny rights guaranteed by either the Constitution or the laws of the United States. Jurisdiction is granted by 28 U.S.C. § 1343. This Court does conclude then that it does in fact have jurisdiction over the subject matter of the lawsuit under the complaint as it has been plead.

INDIVIDUAL CITY DEFENDANTS

■ The individual city defendants have been sued in their individual, as well as official capacities as employees of the City of Rapid City. These defendants have made a motion that they be dismissed in their individual capacities due to the fact they were acting in the course of their employment and within the scope of their duties and therefore are not liable to the plaintiffs for their actions. There is abundant authority that employees of a city or state are not immune from suit under 42 U.S.C. § 1983 due to the fact that they were acting within the scope of their responsibilities or performing a discretionary act in some way. As the Ninth Circuit Court of Appeals said in Donovan v. Reinbold, 433 F.2d 738 (9th Cir. 1970):

> "Their alternative contention is that state officials are immune from liability for discretionary acts done within the scope of their authority. (Citations omitted) . . . cautiously

extend immunity to some state officials performing some kinds of discretionary acts. Thus in *Silver* [Silver v. Dickson, 9 Cir., 403 F.2d 642] immunity was extended to members of a state parole board in the performance of their discretionary duties in denying parole. In *Hoffman* [Hoffman v. Halden, 9 Cir., 268 F.2d 280] immunity was recognized for a jailer or keeper who refused to release a prisoner held on warrant or commitment. Neither case stands for the broad principle that all public officials are immune from Civil Rights Act liability if their acts were discretionary and were done within the scope of their official duties." 433 F.2d 738, 744.

It should be noted that the Court in *Donovan* expressed the opinion that a public official could escape liability at trial if they proved that they acted within the scope of their responsibilities and acted in "good faith". *See* Donovan v. Reinbold, 433 F.2d 738, 743–744 (9th Cir. 1970). However, such issues of good faith are not for this Court to determine in a motion to dismiss. This Court must find that the officers and employees of the City of Rapid City, acting in their official capacities and as individuals, are not immune from suit under 42 U.S.C. § 1983, and deny the defendants' motion to dismiss in that regard.

■ However, certain of the individual city defendants named do have specific immunities depending upon their position. The defendants Merton B. Tice, Ray E. Woodsend, and Lawrence Bihlmeyer have been sued in their individual capacities as city attorneys. The Eighth Circuit Court of Appeals in the case of Rhodes v. Meyer, 334 F.2d 709 (8th Cir. 1964) has held such attorneys, acting within the scope of their responsibilities, to be immune from personal liability. This Court takes this immunity to mean that the enumerated defendants immediately above are immune from individual damage suits. *See*, C. Antieau, Federal Civil Rights Acts, pp. 67–74 (1971). However, such defendants

will not be dismissed from this action in their capacities as city attorneys in the portion of this suit which seeks an injunction from future attempts to collect such rentals as may have been assessed by the city. Members of the City Council do not have such complete immunity, but only a qualified privilege. To escape personal liability themselves, it must be proven at trial that they acted in good faith in the performance of their duties. *See,* Nelson v. Knox, 256 F.2d 312 (6th Cir. 1958).

## UNITED STATES OF AMERICA

The central contention in the plaintiffs' complaint is that 42 U.S.C. § 4436(a) provides and establishes that the lots upon which the temporary housing is to be placed are to be provided rent free to the disaster victims. 42 U.S.C. § 4436(a) reads as follows:

"The Director is authorized to provide temporary housing or other emergency shelter, including, but not limited to, mobile homes or other readily fabricated dwellings for those who, as a result of such major disaster, require temporary housing or other emergency shelter, except that for the first twelve months of occupancy no rentals shall be established for any such accomodations, thereafter rentals shall be established, based upon fair market value of the accomodations being furnished, adjusted to take into consideration the financial ability of the occupant. Notwithstanding any other provision of the law, any such emergency housing acquired by purchase may be sold directly to individuals and families who are occupants thereof at prices that are fair and equitable. Any mobile home or readily fabricated dwelling shall be placed on a site complete with utilities provided by State or local government, or by the owner or occupant of the site who was displaced by the major disaster, without charge to the United States. However, the Director may elect to provide other more economical and accessible sites at Federal expense when he determines such action to be in the public interest."

The question is whether the above statute requires that the local lot sites be provided to the disaster victims free of charge by both the Federal and city governments involved. After having considered the statute and the arguments provided, and fully considering the same, this Court is of the opinion that the defendants have reached the correct interpretation of 42 U.S.C.A. § 4436(a).

■ In all federal-state welfare programs, the states are not obligated to participate. However, once states make the decision to participate in the program and to receive federal funds for all or part of that program, the states are bound to follow federal law. King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). The statute says that the Director is authorized to provide temporary housing. The statute specifically states that this housing is to be "provided" free of charge. Later in the statute the word "provide" is used again in relation to the site of the dwelling and that it is to be provided by the state or local government. The statute uses the same word "provide" when referring both to the federal, state and local governments. This is the central point in the plaintiffs' position.

The Supreme Court of the United States said in Atlantic Cleaners and Dyers v. The United States, 286 U.S. 427, 52 S.Ct. 607, 76 L.Ed. 1204 (1931) the following:

"Undoubtedly there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning." 286 U.S. 427, 433, 52 S.Ct. 607, 609, 76 L.Ed. 1204.

There the Supreme Court was discussing the words "restraint of trade or commerce" as used in the various sections of the Sherman Anti-Trust Act. The Court did continue and state the following:

"But the presumption is not rigid and readily yields whenever there is such

variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent." 286 U.S. 427, 433, 52 S.Ct. 607, 609, 76 L.Ed. 1204.

The legislative history, as found in the U.S.Code Congressional and Administrative News, is not particularly helpful in resolving this issue. *See,* 1970 U.S.Code Cong. & Admin.News, p. 5486 et seq. However, it is clear that this legislation was passed in response to a number of natural disasters that were occurring throughout the nation. *See,* 1970 U.S.Code Cong. & Admin. News, p. 5490. Congress clearly had in mind the fact that in the natural disasters there were great numbers of people who were without housing, without jobs and with a great many debts still to pay. This legislation was passed to provide a quick relief for a period of up to a year that could alleviate some of the problems for the disaster victims. It was not designed as a cure-all. This Court believes from its reading of the Disaster Relief Act of 1970, that it was not considered within the framework of that Act whether or not the state and local governments should reimburse themselves for the expenses incurred in providing these lot sites.

■ However, the reading of the entire statute leads this Court to the conclusion that the word "provide" was used in a different sense when referring to the different government bodies. Clearly Congress was aware of how to specify that the housing was to be provided free of charge. In relation to the temporary housing *itself* section 4436(a) specifically provides "that for the first twelve months of occupancy no rentals shall be established for any such accomodations." In a later portion of that section, the Act refers to the lots for such temporary housing. When the section states that the dwellings are to be placed on sites provided by local governments or the occupants themselves "without charge to the United States," the section implies that the Act may contemplate additional charges. Clearly *lot sites* are

treated differently from the *dwellings* themselves. Also it is clear that the Act does not specifically preclude rental charges for the trailer sites as it does for the dwellings themselves. This Court is of the opinion that the Disaster Relief Act of 1970, specifically 42 U.S.C. § 4436(a), did not preclude the City of Rapid City from charging rent on the lots provided for the temporary emergency housing. The Act does not require the United States to prevent or pay for such charges. That being the case, the plaintiffs' claims stemming from the contention that 42 U.S.C. § 4436(a) precludes such rental payments must be dismissed.

■ The plaintiffs allege that the United States of America has denied the Rapid City flood victims of the equal protection of the law by the failure of the United States to provide mobile home lots without imposing rental charges. The plaintiff alleges that the Rapid City victims are the only major flood disaster victims in the United States that have been required to pay rental on sites provided by the state or local government. The due process clause of the Fifth Amendment guarantees plaintiffs equal protection of the law from the federal government. *See* Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). However, the equal protection of the law as guaranteed by the Constitution of the United States does not preclude all disparities in treatment. To justify disparities in treatment the United States Government must demonstrate some rational purpose. *See,* Dandridge v. Williams, 397 U.S. 471, 90 S. Ct. 1153, 25 L.Ed.2d 491 (1970).

The plaintiffs cite the case of Levy v. Parker, 346 F.Supp. 897 (E.D.La.1972), aff'd, 411 U.S. 978, 93 S.Ct. 2266, 36 L. Ed.2d 955 (1973) as controlling. There the court struck down a statutory scheme for the distribution of property tax relief to the various cities in the state of Louisiana. The court, in discussing the equal protection clause, said:

"    .    .    assures equality not only in the imposition but also in the distribution of state revenues. (Citation

omitted). Even largess must be dispensed with an even hand. (Citations omitted.) Tax relief funds, designed to assist localities by making funds raised by state taxes available to local governmental agencies, must be administered by statute and in practice so as to avoid that governmental favoritism to one person over another that the Fourteenth Amendment was designed to proscribe. The failure to accord equal protection to all persons may not be justified by the sophistry that the receipt of funds from the legislature is a 'privilege' and not a 'right.' " 346 F.Supp. 897, 903.

While the *Levy* case was discussing the equal protection clause of the Fourteenth Amendment, the same principles apply with equal force to the United States Government in relation to the Fifth Amendment to the United States Constitution. As noted in *Levy,* the fact the benefits were provided to the flood victims as a gift and that the government was not, in the first place, obligated to provide these benefits, does not alleviate the necessity of following the constitutional dictates in the administration of the program. *See generally,* Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

■ In summary, the plaintiffs have alleged that they are the only victims of a major disaster to be forced to pay lot rental on emergency housing provided by the United States Government. The plaintiffs contend that there is no rational reason—that there is no justification for such disparity in treatment.

This Court has discussed its view of what 42 U.S.C. § 4436(a) requires. This Court's view of the record is that the defendant United States has provided all that it was *obligated* to provide. 42 U.S.C. § 4436(a) affirmatively provides that the lots shall be provided "at no cost to the United States." However, the plaintiffs allege that the United States has in prior disasters provided reimbursement to other state and local governments in relation to lots provided. (*See,* Plaintiffs' Brief, p. 7). It appears then that the plaintiffs allege that the United States has provided monies to defray the local expense of setting up the trailer lots in other places, but has refused to do so in Rapid City, South Dakota. This disparity in treatment has resulted in lot rental charges to the Rapid City flood victims. That being the plaintiffs' allegation, this Court is of the opinion that it does state a cause of action in that limited fashion. Assuming the plaintiffs' allegation to be fact, the defendants may be able to show some reason for the distinction. That is not an issue for this Court to decide in the present state of the record.

■ The plaintiffs also make a contractual claim against the United States. The claim is not for misrepresentation. The crux of the plaintiffs' claim is that the United States Government allowed rent charges to be imposed by the city defendants in breach of the contract that the United States Government entered into with the plaintiffs. That is, the contract that the United States Government entered into with the plaintiffs, provided for rent-free housing and that that rent-free housing included rent-free lots. It appears to be the city defendants' position that they charged the lot rentals either under the direction or with the approval of the Federal Government. Resolution of this is not something that can be decided upon the motion to dismiss. However, the United States District Court can entertain actions to enforce contracts made by the government. *See,* United States v. Great Falls Mfg. Co., 112 U.S. 645, 5 S.Ct. 306, 28 L.Ed. 846 (1884), Alliance Assurance Co. v. United States, 252 F.2d 529 (2nd Cir. 1958). This Court does feel that the plaintiffs' contract action in fact states a claim upon which relief could be granted should these factual allegations in the plaintiffs' complaint be borne out.

## CITY OF RAPID CITY

The plaintiffs have stated several causes of action against the City of Rapid City and its various officers and employees. This Court has already discussed its opinion and its interpretation of 42 U.S.C. § 4436(a). It shall not do so again. Clearly, then, the plaintiffs' cause of action against the city defendants arising under 42 U.S.C. § 1983 regarding the denial of a statutory right fails to state a cause of action upon which relief can be granted. It is the plaintiffs' complaint that the city defendants violated the equal protection of the law in failing to provide totally rent-free housing. This Court is satisfied that the complaint therein does in fact state a cause of action. *See*, Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920 (2nd Cir. 1968). The city government has an obligation to make an effort to provide municipal services in an equal manner to all classes of persons. The fact that some people were provided with totally rent-free housing and some were provided with housing that they were charged for states a claim upon which relief could be granted. The defendants, at some point in time, may be able to demonstrate some rational reason for the disparity in treatment. Should that be the case, no violation of equal protection clause would be found.

The plaintiffs also appear to make the argument that the imposition of rental fees were an *ultra vires* act. S.D.Comp.Laws Ann. § 9–12–1(6) (1967) provides that the municipality has the power to "convey, sell, give, dispose of, or lease both the personal and real property of the municipality as provided by this title." This Court is of the opinion that the City of Rapid City had the authority and power to buy, prepare and lease land under the provisions of the South Dakota Code and the city charter and various by-laws. So with respect to that claim, the motion to dismiss for failure to state a claim will be granted.

There are a great many factual allegations contained in the plaintiffs' complaint which, of course, this Court may not pass upon in a motion to dismiss. The factual allegations are important in some of the plaintiffs' claims and not in others. This Court has expressed its opinion as to the statutory interpretation of 42 U.S.C. § 4436. However, this Court has held that other allegations state claims upon which relief can be granted. That being the case, this Court will not dismiss the action.

The plaintiff will prepare the necessary order to effectuate the opinion of this Court.